Estate of Rudd Hardesty, Deceased, The Denver National Bank, Executor v. Commissioner.
Estate of Hardesty v. Commissioner
Docket No. 29670.
United States Tax Court
1952 Tax Ct. Memo LEXIS 258; 11 T.C.M. (CCH) 359; T.C.M. (RIA) 52110; April 15, 1952
Guy K. Brewster, Esq., 1011 University Bldg., Denver, Colo., for the petitioner. Wm. B. Springer, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: This proceeding involves a deficiency in estate tax of $50,863.46, as determined by the Commissioner. Petitioner claims a refund for overpayment in the Gladys V. January Trust. The question for our determination *259 is what part of the corpus of each of the five trusts created by the decedent on July 1, 1935, is includible in his gross estate under section 811 (c) and section 811 (d) (2) of the Internal Revenue Code. The parties have agreed that credit for Colorado State Inheritance Tax and Colorado Estate Tax, deductions for attorneys' and executors' fees and other administration expenses will be handled under a Rule 50 recomputation, upon submission by petitioner to respondent of proper evidence under the Internal Revenue Code and Treasury Regulations. Findings of Fact Some of the facts were stipulated and are so found. The decedent, Rudd Hardesty, died testate on May 30, 1948, in Denver, Colorado, his place of residence, and the Denver National Bank, named as executor in his will, was duly appointed as such by the County Court of Denver. The will was dated March 1, 1946. Decedent was born August 18, 1870, and was twice married. He married Mary Richmond in 1892, and there were three children from this marriage, viz: Roy R. Hardesty, born in 1893; Gladys V. Hardesty, now Gladys V. Lindsay, born September 22, 1894; and John Duncan Hardesty, born in 1903. Gladys *260 V. Lindsay has one daughter, Jeanne January, born May 13, 1918. In 1908 decedent married Ada Rudd, his first cousin, and there were four children from this marriage, viz: Rudd Hardesty, Jr., born December 23, 1909; Sue Hardesty, now Sue Senter, born July 4, 1911; Walker Hardesty, born October 2, 1913; and Martha Hardesty, now Martha Minshall, born July 10, 1916. Ada predeceased the decedent. Decedent's children of both marriages and his granddaughter, Jeanne January, all survived him. At the date of decedent's death, Martha had three children living, Sue had two living, Rudd, Jr., had three living and Jeanne January had two children living. On July 1, 1935, decedent created five separate declarations of trust which were designated as Gladys V. January Trust (her maiden name was Gladys V. Hardesty), Rudd Hardesty, Jr., Trust, Sue Senter Trust, Walker Hardesty Trust and Martha Hardesty Trust. The decedent was named trustee in each trust, and the Denver National Bank was named successor or substitute trustee. On July 1, 1935, decedent caused a certificate for 202 shares of the capital stock of the Hardesty Investment Company to be transferred to the trustee under each of said trusts, *261 and he paid $1,667.85 Federal gift tax upon the transfers of said stock to the five trusts. Decedent created the said trusts to make provision for the support of his five children therein named. He was already having largely to support these children, and he thought there would be a saving of income tax if he created the trusts and let the children "pay their own income taxes." Furthermore, he made the transfers at that time to avoid having to pay increased Federal gift tax. He then understood Congress was about to increase the gift tax rates, which it did in the Revenue Act of 1935, approved August 30, 1935, which increased gift tax rates became effective January 1, 1936. The transfers by the decedent to the five trusts were not made by him in contemplation of death. All five trusts are similar in substance and phraseology and were stipulated, and we quote excerpts therefrom. The Martha Hardesty Trust, in paragraph three, directed the trustee to pay the net income of the trust estate to: "Section A. To Martha Jane Hardesty during her lifetime. * * *
"PARAGRAPH FOUR. "DISTRIBUTION OF TRUST ESTATE: "The trustee shall distribute such trust estate: "Section A. *262 To the issue of trustor's daughter, Martha Jane Hardesty, if she leave issue, upon the death of Martha Jane Hardesty. "Section B. To the Rudd Hardesty Trust, the Walker Hardesty Trust, the Sue Senter Trust and the Gladys V. January Trust, in equal proportions to each, in the event that Martha Jane Hardesty shall die leaving no issue, upon the death of Martha Jane Hardesty. In the event that any of said last mentioned trusts shall not then be in existence, then the distribution shall be in equal portions to the remaining trusts or in full to the remaining trust, as the case may be. "Section C. To the heirs of trustor in accordance with the law of descent and distribution now prevailing and in force in the State of Colorado, upon the death of Martha Jane Hardesty, in the event that distribution cannot be made or is not provided for under the previous sections of this paragraph." The Sue Senter Trust, regarding payment of income "during her lifetime" and the distribution of the trust, etc., was of the same identical pattern as the Martha Hardesty Trust. The Rudd Hardesty, Jr., Trust, in paragraph three, directed that the trustee should pay the net income of the trust estate: *263 "Section A. To Rudd Hardesty, Jr., during his lifetime, or until full distribution of the trust estate, as hereinafter provided. * * *
"PARAGRAPH FOUR. "DISTRIBUTION OF TRUST ESTATE: "The trustee shall distribute such trust estate: "Section A. To Rudd Hardesty, Jr., one-half thereof when he attains the age of forty (40) years, and the remaining trust estate when he attains the age of fifty (50) years. It is expressly provided, however, in this regard, that in the event that he shall be mentally incapacitated at the time of any of the distributive periods to him, as just hereinbefore set forth, or shall have been mentally incapacitated within a ten year period immediately preceding such time, no distribution or partial distribution, as the case may be, shall be made to him of said trust estate, but such trust estate shall be continued during his lifetime. The determination of the trustee as to what constitutes mental incapacity shall be final and conclusive. "Section B. To his issue upon his death, in the event that the trust estate be then in existence." The Walker Hardesty Trust as to payment of income and distribution of trust estate follows identically the *264 pattern set forth in the Rudd Hardesty, Jr., Trust. The Gladys V. January Trust, in paragraph three, directed the trustee to pay the net income of the trust estate: "Section A. To Gladys V. January during her lifetime. "Section B. Upon the death of Gladys V. January, if she be survived by her daughter, Jeanne January, to Jeanne January during her lifetime. * * *
"PARAGRAPH FOUR. "DISTRIBUTION OF TRUST ESTATE: "The Trustee shall distribute such trust estate: "Section A. To the issue of Trustor's granddaughter, Jeanne January, if she leave issue, upon the death of Jeanne January or Gladys V. January, whichever event occurs last. "Section B. To the Rudd Hardesty Trust, the Sue Senter Trust, the Walker Hardesty Trust and the Martha Hardesty Trust, in equal portions to each, in the event that Jeanne January shall die leaving no issue, upon the death of Gladys V. January or Jeanne January, whichever event shall occur last. In the event that any of said last mentioned trusts shall not then be in existence, then the distribution shall be in equal portions to the remaining trusts or in full to the remaining trust, as the case may be. "Section C. To the heirs of *265 Trustor in accordance with the law of descent and distribution now prevailing and in force in the State of Colorado, upon the death of Gladys V. January or Jeanne January, whatever event occurs last, in the event that distribution cannot be made or is not provided for under the previous sections of this paragraph." Paragraph Eight of each of the trusts for Martha Hardesty, Sue Senter, Rudd Hardesty, Jr., and Walker Hardesty provides: "This trust shall be irrevocable. Trustor, however, reserves the right, within his uncontrolled discretion, during his lifetime to distribute, or cause to be distributed the trust estate to [name of primary beneficiary], thus terminating the trust." Paragraph Eight of the trust described as Gladys V. January Trust states: "This trust shall be irrevocable. Trustor, however, reserves the right, within his uncontrolled discretion, during his lifetime to distribute, or cause to be distributed, the trust estate to either Gladys V. January or Jeanne January, thus terminating the trust." In paragraph three of each trust instrument it is provided: "Upon the death of any beneficiary entitled to income from the trust estate, all right to receive distribution *266 of income or allowances therefrom shall cease, and the estate of such person shall have no right to any earned and undistributed income or allowance, but, on the contrary, such undistributed income or allowances shall be administered and distributed as if accrued, earned or received immediately thereafter." Paragraph four, Section D of the Martha Hardesty and Sue Senter Trusts and paragraph four, Section E of the Rudd Hardesty, Jr., and Walker Hardesty Trusts provide: "Anything herein to the contrary notwithstanding, the trustee is authorized and empowered to devote and use so much of the principal or corpus of the trust estate as he or it shall deem proper at any time and from time to time for the use and benefit of [name of primary beneficiary], in case the income from the trust estate shall be inadequate in the trustee's opinion for the proper care, maintenance and support of [name of primary beneficiary] during his [her] lifetime, or in case of any emergency in the opinion of trustee justifying the same." Each trust contained a provision that payments due the beneficiary thereunder could not be anticipated or encumbered in any way. Decedent resigned as trustee of *267 the five trusts on January 30, 1948, and the Denver National Bank immediately became successor trustee and thereafter administered same. Decedent, while serving as trustee, accounted for the income therefrom to the income beneficiaries and the successor trustee did also during its administration of the trusts. In March or April, 1948, prior to decedent's death, when Rudd, Jr., was 38 years of age, the bank, as trustee, determined Rudd, Jr., mentally incapacitated, basing same on judgment of mental illness and order for commitment of Rudd, Jr., by Superior Court of San Mateo County, California. In September or October, 1948, after decedent's death, and when Walker was 35 years of age, the bank, as trustee, determined Walker mentally incapaciated, basing same on an order of the Superior Court of King County, Washington, finding him mentally incompetent. Petitioner filed its Federal estate tax return with the collector of internal revenue for the district of Colorado and paid estate tax based thereon in the amount of $61,841.61. In the return petitioner reported a gross estate at date of death of $336,589.81. Of that amount, $59,597.93 represented that portion of the five trusts *268 created by decedent July 1, 1935, considered by the petitioner as includible in the gross estate. The executor elected the optional valuation date under section 811 (j) of the Internal Revenue Code. In Schedule G of the return the executor listed the property composing the corpora of the five trusts and included only a portion of the value of the corpora of each of the trusts in the gross estate with the explanation that "The included portion of the trusts represents the value attributable to decedent's reserved right to terminate trusts." In Schedule G of the return the value of the corpora of the five trusts which was included in the gross estate by the executor was computed as follows: RUDD HARDESTY ESTATE
Valuation of Trusts for Estate Tax Purposes
GLADYS V. JANUARY Born 9-22-94. Age 5-30-48 - 54.
TRUST
Life interest with Value of trust, 5-30-48
$44,662.73
power in trustor during Value of trust, 5-30-49
42,914.00
his lifetime to distribute Value of reversion, 4% table, age 54
52757
corpus.52757 X 44,662.73
$23,562.72
Optional.52757 X 42,914.00
22,640.14
MARTHA HARDESTY Born 7-10-16. Age 5-30-48 - 32.
TRUST
Same as January Trust Value of trust, 5-30-48
44,678.06
Value of trust, 5-30-49
42,929.33
Value of reversion, 4% table, age 32
.31929
.31929 X 44,678.06
14,265.26
Optional.31929 X 42,929.33
13,706.91
SUE SENTER TRUST Born 7-4-11. Age 5-30-48 - 37.
Same as January Trust Value of trust, 5-30-48
44,149.91
Value of trust, 5-30-49
43,858.83
Value of reversion, 4% table, age 37
.35599
.35599 X 44,149.91
15,716.93
Optional.35599 X 43,858.83
15,613.30
RUDD HARDESTY, JR. Born 12-23-09. Age 5-30-48 - 38.
TRUST
Assume he would not Value of trust, 5-30-48
44,156.76
take principal at age Value of trust, 5-30-49
43,864.57
40, but would at age Reversion after 12 year annuity.624597
50 Prob. of death between ages 38-50.9807
.79611
.123186
.624597 X 44,156.76 = 27,580.18 X
.123186
3,397.49
Optional.624597 X 43.864.57 = 27,397.68 X
.123186
3,375.01
WALKER HARDESTY Born 10-2-13. Age 5-30-48 - 35.
TRUST
Assume he would take Value of trust, 5-30-48, 44,674.05 / 22,337.03
1/2 of principal at age 40 Value of trust, 5-30-49, 42,925.32 / 21,462.66
and 1/2 at age 50 Reversion of 5 year annuity.821927
Reversion of 15 year annuity.555265
Prob. of death, ages 35-40 3716
=.045415
81822
ages 35-40 12018
=.146880
81822
5 year: .821927 X 22,337.02 = 18,359.40 X
.045415
= 833.79
15 year: .555265 X 22,337.02 = 12,402.97 X
.146880
= 1821.74
$ 2,655.53
Optional - 5 year: .821927 X 21,462.66 = 17,640.74 X
.045415
= 801.15
15 year: .555265 X 21,462.66 = 11,917.46 X
.146880
= 1750.44
$ 2,551.59
*269 In his notice of deficiency the Commissioner determined that the value of the entire corpora of the five trusts amounted to $216,452.27, and that all of same "is includible in the gross estate under the provisions of section 811 (c) and 811 (d) of the Internal Revenue Code". The fair market value of the corpora of each trust as of the optional valuation date is as follows: Martha Hardesty Trust
$ 42,938.71
Rudd Hardesty, Jr., Trust
43,823.95
Walker Hardesty Trust
42,935.70
Gladys V. January Trust
42,935.70
Sue Senter Trust
43,818.21
$216,452.27
Opinion The respondent included in the gross estate of petitioner the entire value of the corpus of each of the five trusts created on July 1, 1935, under the provisions of sections 811 (c) and 811 (d). He contends, (1) that the transfers to the trusts were made in contemplation of death, as defined in 811 (c), and (2) that the decedent retained for his life the right "to designate the persons who shall possess the property or income therefrom" under section 811 (d). Having found as an ultimate fact that the transfers were not made by the decedent in contemplation of death, we shall *270 not discuss this issue. There is not the slightest testimony indicating that the decedent contemplated death when he made these transfers, but the contrary clearly appears from the record. It was eleven years after the transfers were made when decedent first made his will, and his death occurred some thirteen years after the transfers. His purpose in creating the trusts clearly appears to have been to provide living expenses for those of his children whom he was then largely supporting, and by so doing to let them, rather than himself, pay income tax on the amounts he was contributing to them, and thereby place him in a lower income tax bracket. Also the transfers were made in July, 1935, to avoid the increased gift tax rates soon to be imposed. Paragraph 8 in each of the five trusts was substantially the same and the power retained therein by the trustor was sufficient to bring all of the trusts within the purview of section 811 (d) (2). Both parties apparently so agree and petitioner in its estate tax return included in the gross estate a portion of the value of the corpus of each trust, while the respondent in his notice of deficiency included the entire value of each trust. *271 We are not impressed with respondent's contention that the entire value was includible under section 811 (d); in fact his brief indicates that his claim for inclusion of the entire value is predicated largely upon his insistence that the trust instruments were executed in contemplation of death, upon which issue we hold against respondent. Respondent's brief states the issue is whether he erred in including the entire value of the five trusts and "if he did so err, what amount is to be excluded with respect to each trust". Specifically, respondent attacks petitioner's valuation in only three of the trusts. He avers that if the Court should decide that some value representing the income interest of Gladys should be excluded, "in no event could any interest be excluded as representing the interest of her daughter Jeanne", and in the Rudd Hardesty, Jr., and Walker Hardesty trusts, if "it should be decided that some value representing the income interest of Rudd, Jr., and Walker should be excluded, in no event could any amount be excluded as representing the possibility of their receiving corpus". It has been well settled that a vested life estate is excluded in valuing the interest *272 which takes effect at death. Rabkin and Johnson, Federal Income, Gift and Estate Taxation, Vol. 2, p. 3350, and cases there cited. See also Estate of Frank Clowe, 17 T.C. 1467 (promulgated March 12, 1952) and cases cited. In each of the five trust indentures the beneficiary therein was irrevocably vested with at least a life estate, the value of which was excludible in determining the value of the estate. As to the Martha Hardesty and Sue Senter Trusts, respondent alleges no error as to the amounts excluded from gross value by petitioner in the estate tax return. Since the beneficiary in each of these trusts had a vested life estate, the value of which is excludible, and this alone was excluded by petitioner, we approve petitioner's valuation as to the Martha Hardesty and Sue Senter Trusts. As to the Gladys V. January Trust, petitioner, in the estate tax return, excluded only the value of Gladys' life estate, but in its pleading alleged that the life estate of Jeanne January should also have been excluded, and claimed a refund for overpayment by reason of this omission. Respondent specifically attacks only petitioner's claim as to the exclusion of the Jeanne January *273 life estate, and not that of Gladys. We hold that the life estate of Gladys was excludible, and therefore approve petitioner's valuation in the return, but sustain respondent's valuation in the return, but sustain respondent's contention as to the exclusion of Jeanne's life estate. Unlike her mother, Jeanne had no vested life estate. Her interest was merely a contingent one and might never materialize. We accordingly overrule petitioner's claim for overpayment. In the Rudd, Jr., and Walker Hardesty Trusts, in addition to the life estate income provision was made for payment to the beneficiary in each of one-half of the corpus when he was forty years of age and the remainder when he attained the age of fifty years, provided, however, that if the beneficiary "shall be mentally incapacitated at the time of any of the distributive periods * * * or shall have been mentally incapacitated within a ten-year period immediately preceding such time", no such distribution shall be made to him of said trust estate, but such trust estate shall be continued during his lifetime. Petitioner's valuation in the estate tax return assumed that Rudd, Jr., would not take the principal at age forty, but *274 would at age fifty, and that Walker Hardesty would take one-half of principal at age forty and one-half at age fifty. We think the petitioner erred as to this computation in each of these trusts, and that only a life estate in the income of the beneficiary in each trust should be excluded from the gross estate. Rudd, Jr., and Walker were both mentally incapacitated within a ten-year period prior to their becoming forty years old. Their mental incompetency had been so determined by the trustee and also judicially decreed by courts of competent jurisdiction in 1948. There was nothing to indicate that the mental incompetency of each was temporary and not permanent. No evidence was offered as to the mental competency at the time of the hearing in April, 1951, and we assume that their condition was the same at that time. Without evidence so indicating, we cannot assume that the present mental incompetency of Rudd, Jr., and Walker will not continue to within ten years of each of their fiftieth birthdays. The value of Rudd, Jr.'s and Walker's life estate in the income should be subtracted from the value of each trust and the remainder included in the gross estate of petitioner. Decision *275 will be entered under Rule 50.